IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:21-CV-261-MR-DCK

| | |
|---|---|
| TODD LYNN PARKIN, | ) |
|     Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| BUNCOMBE COUNTY SCHOOL DISTRICT, TONY BALDWIN, DAVID THOMPSON, CONNIE DENNING, MELANIE RAMSEY, KAREN BARNHILL, DIANE MCENTIRE, and GINA SCHWEITZER, | ) |
|     Defendants. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 8). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

### I. PROCEDURAL BACKGROUND

Todd Lynn Parkin ("Plaintiff" or "Parkin"), appearing *pro se*, initiated this action with the filing of a "Complaint In Intervention For Violations Of: (1) Title II Of The Americans With Disabilities Act Of 1990; (2) Section 504 Of The Rehabilitation Act Of 1973; (3) 42 U.S. Code, Sections 1983 and 1986" (Document No. 1) (the "Complaint") on September 29, 2021. The Complaint was sealed and restricted to case participants on or about October 4, 2021, to protect minors' names and birthdates. On October 25, 2021, the Honorable Martin Reidinger ordered Plaintiff to file redacted versions of the Complaint and its accompanying exhibits that only identify

his minor child by initials and year of birth. (Document No. 12). Plaintiff re-filed the Complaint, with redactions, on November 9, 2021. (Document No. 16).

The Complaint asserts claims against the Buncombe County School District ("BCS"), Tony Baldwin (Superintendent of BCS) ("Baldwin"), David Thompson (BCS Director of Student Services) ("Thompson"), Connie Denning (BCS Assistant Exceptional Children ("EC") Director) ("Denning"), Karen Barnhill (Principal Enka Middle School) ("Barnhill"), Diane McEntire (Assistant Principal Enka Middle School) ("McEntire"), Gina Schweitzer (Intensive Intervention Teacher at Cane Creek Middle School) ("Schweitzer"), and Melanie Ramsey (Director and Principal of Progressive Education Program at T.C. Roberson High School) ("Ramsey"), (all together, "Defendants"). (Document No. 16, pp. 1-3).

According to the Complaint, Plaintiff Parkin is the father of two children who were enrolled in Buncombe County Schools; who he had "sole and exclusive legal custody" of between August 14, 2017, and September 30, 2019. (Document No. 16, pp. 3, 10); see also (Document Nos. 16-1 and 16-4), (Document No. 9, pp. 1-2). On September 30, 2019, Plaintiff lost "sole and exclusive legal custody" of his children to their mother, Cynthia Moses, following a court-ordered Custodial Evaluation and subsequent "Custody Order" (Document No. 16-4) issued by the Buncombe County, North Carolina District Court (the "State Court"). (Document No. 16, p. 10, 14-15), (Document No. 9, p. 2).

The parties agree that Plaintiff's "chief complaint" is that "several BCS employees volunteered as favorable witnesses for the minor children's mother" related to the State Court's "Custodial Evaluation" in 2018. (Document No. 14, p. 2); see also (Document No. 9, p. 2). The Complaint alleges that the BCS employees "provided false and misleading information to the Custodial Evaluator contravening the terms and conditions set forth in the November 3rd, 2018

2

Settlement and Resolution Agreement and contradicting the documentary evidence contained in BCS student files/records." (Document No. 16, p. 18) (citing Document No. 16-5). Defendant summarizes that: "Parkin believes school employees defamed him when they spoke to the custodial evaluator and undermined his civil rights because he subsequently lost sole legal custody of his children." (Document No. 9, p. 2).

Plaintiff's Complaint asserts claims against Defendants for: (1) Educational Negligence; (2) Breach of Contract; (3) Violation of 42 U.S.C. §§ 1983 and 1985; (4) Retaliation – violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; and (5) Defamation. (Document No. 16, pp. 25-27).

"Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 9) and "Memorandum Of Law In Support…" were filed on October 22, 2021. The "Response To Defendant's Motion To Dismiss Plaintiff's Complaint" (Document No. 14) was filed on November 5, 2021; and "Defendants' Reply Brief In Support Of Motion To Dismiss Plaintiff's Complaint" (Document No. 21) was filed on November 19, 2021.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Martin Reidinger.

## II. STANDARD OF REVIEW

"The district courts of the United States are courts of limited subject matter jurisdiction." U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citing Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "Courts must generally decide jurisdictional issues first." Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 187 (4th Cir. 2019). That is certainly true of subject matter jurisdiction: courts must always assure themselves of subject matter jurisdiction before reaching the merits, even if the parties have not raised it. Id. (citing Arbaugh

v. Y&H Corp., 546 U.S. 422, 430-31 (2007). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." Vuyyuru, 555 F.3d at 347 (citing Arbaugh, 546 U.S. at 506–07. "[A] challenge to '[s]ubject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final judgment." Hewett v. Shapiro & Ingle, 2012 WL 1230740, at *3, n.2 (M.D.N.C. Apr. 12, 2012) (quoting In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010)).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III.  DISCUSSION

Defendants seek to dismiss Plaintiff's Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(1), (2), and (6). (Document No. 8). Defendants contend that "[a]ll of Parkin's claims against Defendants fail to state a claim upon which relief may be granted." (Document No. 9, p. 2).

**A.  Factual Background**

Underlying this action is a protracted custody dispute and related State Court litigation between Plaintiff Todd Parkin and his ex-wife Cynthia Moses ("Moses"). (Document No. 9, p. 3). Plaintiff and Moses separated on November 11, 2007 and divorced on March 6, 2009. (Document No. 16-3, p. 2).

A "Custody Consent Order" was first entered in Todd Parkin v. Cynthia Moses f/k/a Cynthia Palmeri, 08-CVC-3345, on or about September 3, 2008. (Document No. 16-4, p. 1). Subsequent "Custody Orders" were issued by the State Court on August 12, 2009, August 14, 2017; and September 30, 2019. Id. A significant and on-going source of the conflict between Parkin and Moses relates to the education and care of their children J.P. and M.P., particularly J.P. – who was diagnosed with autism at the age of two (2) – and communications between the parents about those decisions. (Document No. 16).

5

On August 14, 2017, Plaintiff was awarded "sole and exclusive legal custody of the parties['] minor children." (Document No. 16-1, p. 19; Document No. 16, p. 6). At that time, both parties were determined by the State Court to be "fit and appropriate individuals to have physical custody of the minor children." (Document No. 16-1, p. 18). The State Court further held that "Defendant [Moses] has the absolute right to obtain any records and information from any provider for the minor children." (Document No. 16-1, p. 19).

"Moses filed a Motion for Modification of Custody and Motion for a Custodial Evaluation" on or about February 23, 2018. (Document No. 16, p. 14; Document No. 16-4, p. 2). On May 17, 2018, "Dr. Chris Mulchay, PhD, was ordered by the [State] Court to complete a Child Custody Evaluation, including psychological evaluation of the Plaintiff and Defendant." (Document No. 9, p. 3; Document No. 16-4, pp. 2-3). Dr. Mulchay submitted the Custodial Evaluation to the State Court on January 29, 2019. Id. The State Court's "Custody Order" from September 30, 2019, includes the following description of Dr. Mulchay's work:

> 21. Dr. Chris Mulchay, PhD was ordered by the Court to complete a Child Custody Evaluation, including psychological evaluations of the Plaintiff and Defendant. That the evaluation spent eight (8) months thoroughly assessing the case including reading submitted documents, emails and records submitted by both parties. Dr. Mulchay interviewed both parties and spoke with collateral witnesses that are integral parts of [] both children's lives over the years. That such Child Custody Evaluation was tendered and properly admitted into evidence by the Defendant without objection from the Plaintiff. The Court finds such report to be comprehensive, extremely detailed, sound in procedure and analysis, unbiased and credible.
>
> 22. Dr. Mulchay had collateral contact with seven (7) sources, had collateral interview questionnaires from five (5) sources, had letters from eleven (11) sources, and reviewed thousands of pages of documents provided by the parties and collateral contacts. Dr. Mulchay met with the parties together and individually in his office and in their respective homes. Dr. Mulchay also met with the minor children in his office and in each parent's home.

(Document No. 16-4, p. 3).

The State Court then awarded "sole and exclusive custody of the parties' minor children" to Cynthia Moses. (Document No. 16-4, p. 11).

In addition to the on-going custody dispute, Plaintiff filed a "Petition for Contested Case Hearing" (OAH Case 18-EDC-3159) in the Office of Administrative Hearings ("OAH") on or about August 3, 2018, against the Buncombe County Schools' Director, Tony Baldwin, and the Board of Education.[1] (Document No. 16, p. 16; Document No. 16-4, p. 2; Document No. 16-5, p. 1). The parties in that action reached a resolution on or about November 1, 2018, and executed a "Settlement And Resolution Agreement" (Document No. 16, p. 17; Document No. 16-5).

Plaintiff's breach of contract claim is based on his allegation that "several District employees (including BCS administrators) knowingly and willingly volunteered to serve as favorable witnesses" for Moses related to the court-ordered Custodial Evaluation conducted by Dr. Mulchay. (Document No. 16, p. 18). Plaintiff contends that such cooperation by BCS employees violated the "Settlement And Resolution Agreement" (Document No. 16-5) between Plaintiff and BCS and disregarded his rights as "a parent granted 'sole and exclusive legal custody authority.'" (Document No. 16, pp. 18-19).

At the conclusion of the Complaint's factual allegations, Plaintiff notes that "as of September 3rd, 2021, Ms. Moses is now seeking 'Permanent Guardianship' of JP who turned eighteen (18) years old on September 14th, 2021," in State Court, and that her Petition attached the "Current Custody Order" which is allegedly "replete with false statements made by District IEP

---

[1] Plaintiff contends the Petition was filed April 23, 2018. (Document No. 14, p. 4).

members concerning material facts."[2] (Document No. 16, p. 25). It appears the custody battle between Parkin and Moses might still be pending before the State Court.

**B. Motion To Dismiss**

The crux of *pro se* Plaintiff's instant lawsuit is his disagreement with the State Court's September 30, 2019, "Custody Order" (Document No. 16-4), and the State Court's reliance in that order on Dr. Mulchay's Custodial Evaluation.

The undersigned finds Defendants' arguments for dismissal based on applicable statutes of limitation, failures to exhaust administrative remedies, and failures to state claims upon which relief can be granted, to be compelling. See (Document Nos. 8, 9, and 21). In addition, however, the undersigned is persuaded that dismissal under the Rooker-Feldman Doctrine is also appropriate. "Although the *Rooker–Feldman* doctrine was not discussed by the parties, it [] is a jurisdictional doctrine that may be raised by the court *sua sponte*." Friedman's, Inc. v. Dunlap, 290 F.3d 191, 195 (4th Cir. 2002)). "Because the *Rooker–Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis." Id. at 196.

The undersigned finds Chief Judge Reidinger's explanation of the application of Rooker-Feldman to be instructive.

> The United States Supreme Court has exclusive jurisdiction over appeals from state-court judgments. See 28 U.S.C. § 1257(a); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). As a corollary to this rule, the Rooker-Feldman doctrine prohibits "a party losing in state court ... from seeking what in substance would be an appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). . . . "The Rooker-Feldman doctrine bars lower federal courts from considering not only issues

---

[2] Plaintiff filed this action within a month of Moses' filing in State Court. (Document No. 16, p. 25). The parties do not address whether there are overlapping issues between any pending State Court litigation and this action.

8

Case 1:21-cv-00261-MR-DCK   Document 22   Filed 09/09/22   Page 8 of 13

> raised and decided in state courts, **but also issues that are 'inextricably intertwined' with the issues that are before the state court**." Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005) (quoting Feldman, 460 U.S. at 486). As the Fourth Circuit has explained, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).

Metcalf v. Graham County, 1:18-CV-274-MR-DLH, 2018 WL 4924556, at *2 (W.D.N.C. Oct. 10, 2018) (dismissing federal claims arising out of North Carolina state court actions concerning custody of plaintiff's grandchildren) (emphasis added).

In this case, all of Plaintiff's claims stem from alleged violations of the State Court's August 14, 2017, "Order" (Document No. 16-1) granting Plaintiff custody of his children, and/or the September 30, 2019 "Order," relying on the "Custodial Evaluation" and granting custody back to Moses. (Document No. 16). Plaintiff's exhibits to the Amended Complaint are four (4) State Court Orders, and the "Settlement And Resolution Agreement" resolving Plaintiff's "Petition for Contested Case Hearing" (OAH Case 18-EDC-3159) before the State of North Carolina's Office of Administrative Hearings.[3] See (Document Nos. 16-1, 16-2, 16-3, 16-4, and 16-5).

In response to the motion to dismiss, Plaintiff re-asserts that his "'chief complaint' against Defendants[] is that several BCS employees volunteered as favorable witnesses for the minor children's mother, . . . against Plaintiff while he enjoyed sole legal custody . . . and after a 'Settlement and Resolution Agreement' was signed." (Document No. 14, p. 2). Later, Plaintiff states that "he is asking the Court to determine, in the simplest of terms, whether school employees

---

[3] Notably, the "Settlement And Resolution Agreement" resolved "any and all issues related to or arising out of the Petitioner and JCP's rights and Respondent's obligations under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. as set forth in Petitioner's Petition for Contested Case Hearing." (Document No. 16-5, p. 2). The Agreement was also subject to approval by "the assigned Administrative Law Judge," but the parties do not indicate whether they requested such approval. Id.

9

(i.e. IEP team members) provided truthful information to the Evaluator concerning Plaintiff's son's educational records." (Document No. 14, p. 15); see also (Document No. 14, p. 24).

The undersigned finds that Plaintiff is asking this Court to review the decision of the State Court judge who ordered the Custodial Evaluation and then found that Evaluation to be

> tendered and properly admitted into evidence by the Defendant without objection from the Plaintiff. The Court finds such report to be comprehensive, extremely detailed, sound in procedure and analysis, unbiased and credible.

(Document No. 16-4, p. 3). The State Court issued its September 30, 2019, "Order" "[h]aving considered the record, testimony of the parties and witnesses, Custodial Evaluation report prepared by Dr. Chris Mulchay, PhD, and other evidence presented at hearing." (Document No. 16-4, p. 1).

The undersigned is convinced that this Court cannot determine whether the information supporting the "Custodial Evaluation" was "truthful" without re-weighing the evidence considered by the State Court three (3) years ago. It does not appear to be appropriate or within this Court's jurisdiction to now re-weigh evidence relied on by the State Court – evidence the State Court judge specifically found to be "unbiased and credible." Plaintiff is effectively challenging the State Court's "Custody Order" by asking this Court to review the evidence supporting that decision and to reach a different conclusion. (Document No. 16-4).

It is this Court's understanding that the "Custodial Evaluation" is sealed by the State Court. See (Document No. 14, pp. 16-17). The Complaint does not attach the "Custodial Evaluation," or identify who allegedly "defamed" Plaintiff. In fact, Plaintiff's response suggests that he has not been able to review the sealed "Custodial Evaluation." Id. It seems that Plaintiff simply (and strongly) disagrees with the State Court's description of the findings of the "Custodial Evaluation" and is thus concluding he has been "defamed" and that somehow the participation of BCS

10

employees in that Evaluation breached the "Settlement And Resolution Agreement."  See (Document No. 16, p. 18, 27-28).

Similar to another case recently before this Court, it appears that Plaintiff's claims here "are inextricably intertwined with the custody and/or guardianship decisions related to Plaintiff's [children] made by the court in [Buncombe] County, **including documents and other evidence presented to and/or considered by the court**."  Braun v. Reeves Law Firm, PLLC, No. 3:22-CV-357-RJC-DCK, 2022 WL 4001964, at *2 (W.D.N.C. Aug. 31, 2022) (emphasis added) (citing Stratton v. Mecklenburg Cnty. Dep't of Social Srvcs., 521 Fed.App'x 278 (4th Cir. 2013); Metcalf v. Call, No. 2:14-CV-010-MR-DLH, 2014 WL 12497025 (W.D.N.C. Mar. 31, 2014)).

In another case where this Court found a complaint was barred by the Rooker-Feldman doctrine, the Honorable Robert J. Conrad, Jr. noted that, as in this case, the plaintiff "even attaches the state court's Child Custody Order to her federal Amended Complaint."  Stephens v. North Carolina, No. 3:18-CV-072-RJC-DSC, 2019 WL 169685, at *3 (W.D.N.C. Jan. 11, 2019).  Judge Conrad then opined that

> despite Plaintiff's attempts to veil her child custody appeal as a lawsuit alleging violations of various federal anti-discrimination laws, this Court must pierce the pleadings and expose this case for what it is: a state-court loser's effort to seek federal redress for an injury caused by a state-court decision.  As such, Plaintiff's federal claim is inextricably intertwined with the state-court decision and is therefore outside the jurisdiction of this Court.

Id.

The undersigned is persuaded that Plaintiff's claims in this case are inextricably intertwined with decisions by the State Court, and therefore, this Court lacks jurisdiction pursuant to the Rooker-Feldman doctrine.  Moreover, the Complaint indicates that there may *still* be litigation pending before the State Court related to the guardianship of one of Plaintiff's children

in which Plaintiff is raising at least some of the same issues he raises in this lawsuit. See (Document No. 16, p. 25).

Even if any of Plaintiff's claims should not be precluded under the Rooker-Feldman doctrine, as noted above, the undersigned is convinced by Defendants other arguments for dismissal. In particular, Defendants persuasively argue that Plaintiff does not allege sufficient factual content to support plausible claims against Defendants. (Document Nos. 9 and 21).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 8) be **GRANTED** and that this action be **DISMISSED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the

objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 9, 2022

David C. Keesler
United States Magistrate Judge